## A. N. GRANT V. THE STATE.

*No. 377.    Decided June 30.*

1. **Playing Cards in a Public Place—Indictment.**—An indictment for playing cards in a public place is sufficient which charges, "did then and there unlawfully play at a game of cards in a public place, to wit, the Commercial Union club room, which club room was then and there a place to which people did then and there commonly resort, for the purpose of business, amusement, and recreation, and which club room was then and there a public place."

2. **Public House—Judicial Knowledge.**—The courts will take judicial knowledge that the houses so denominated in the statute *are* "public" houses; as to all other houses not named, it is a question of fact as to whether they are public or private.

3. **Same.**—"Public house," as used in article 356, Penal Code, designates a house which is commonly open to the public either for business, pleasure, religious worship, the gratification of curiosity, and the like.

4. **Same—Club Room.**—The room or hall of a commercial club, organized for the encouragement of public enterprises, to which, except on public occasions, no persons but members or invited guests could visit; where no gambling was permitted, and where the playing consisted only of games for amusement—such as whist or euchre—amongst the members and invited guests, and then only when the room was not open to the public, is not a "public house" within the meaning of the statute.

APPEAL from the County Court of Parker. Tried below before Hon. I. N. ROACH, County Judge.

This appeal is from a conviction for playing cards in a public place, wherein the penalty assessed was a fine of $10.

Exceptions were made to, and afterwards a motion in arrest of judgment attacked the sufficiency of the indictment (the charging part of which is set out in the opinion) for insufficiency; because, "first, it

fails to allege any fact that will make the room a public place; second, it charges the playing took place in a room, and fails to allege that said room was attached to a public place and commonly used for gaming."

*Harry W. Kuteman*, for appellant.—When a room of a house is designated as the place where the gaming took place, the indictment must allege that the room is attached to some one of the public houses named in the statute, or to some house commonly known as public, and in addition thereto must state that said room is "commonly used for gaming." Penal Code, art. 356; Weiss v. The State, 16 Texas Crim. App., 431; Tummins v. The State, 18 Texas Crim. App., 13; Bacchus v. The State, 18 Texas Crim. App., 15; O'Brien v. The State, 10 Texas Crim. App., 544; Parker v. The State, 26 Texas, 207; Cole v. The State, 28 Texas Crim. App., 536.

The evidence is insufficient, and fails to support the judgment, in this, it shows the said room where the defendant played cards was not a public place, but on the contrary was a private place.

Under this assignment we respectfully submit, that card playing is not a misdemeanor mala in se, but is strictly an offense mala prohibita. It is purely a creature of the statute, and being a restraint of liberty, should be construed cautiously and reluctantly. The object of the law is not to suppress card playing, but the playing in such places and under such circumstances as would set bad and pernicious examples. The term "public place," as meant in the statute, is not one to "which people commonly resort for business, pleasure, and amusement," as charged in the indictment. For "people" commonly resort to our homes, and every other home, for like purposes—and they would certainly not be termed public because our families (who are people) commonly resort there. Yet this is the language of the indictment, and the rule by which the trial judge governed his finding. We think the better test of a public place is that announced in The State v. Alvey, 26 Texas, 156, and approved in Cole v. The State, 28 Texas Criminal Appeals, 536, wherein it is stated a public house is one commonly open to the public for business, pleasure, etc. Measured by this test, the evidence certainly fails to show that the Commercial Union club room was commonly open to the public. People did commonly resort there (to wit, the members), but it was not accessible to the public. Indeed, it was more private than an ordinary dwelling house. If this statute is construed in the light of the well-known rule of interpretation, that the legislative intent must govern, the evidence certainly fails to show any violation of law. One of our judges has said the object of the law is to avoid bad examples. It was not the legislative intent to prohibit card playing altogether, but only under such circumstances as would be calculated to corrupt the public. Had

this club room been a place for gaming or drinking, or any other kind of evil conduct, then our statute would certainly reach it. But where the objects of the club are such as this, and as a mere social feature the members engage in the intelligent and instructive game of whist, no men acting as a legislature or otherwise would wish to destroy it. If this place is not private and the playing therein innocent, where then is the limit of the law? This room is rented and furnished with everything calculated to improve and instruct and ennoble. It is private to those who own it and exclusive to all others. It is as much their place of abode while they occupy it as their respective residences would be; and whether it be the property of one or forty-five it matters not. We therefore submit that card playing in a place like this is not a violation of law, because it is not a public place, as that term is used by the statute. And it is evident from just such extreme cases as these that the lawmakers intended to prescribe the circumstances under which playing in a room becomes penal, viz., it must be attached to a public house and commonly used for gaming.

*R. L. Henry*, Assistant Attorney-General, for the State.—The only questions in the case are the sufficiency of the indictment to charge the offense, and the sufficiency of the evidence to support the conviction. The rule in this class of cases is, that where the place named is not one made public eo nomine by statute, then the facts showing the public character of the place must be alleged in the indictment, which was done in this case. An examination of the authorities will show, that the place alleged in the indictment comes clearly within the definition of a public place contemplated in those articles of the statute prohibiting the playing at a game with cards in a public place. Willson's Crim. Stats., sec. 576. In the case of Lockhart v. The State, 10 Texas, 275, it is held, that a room kept for the common resort for persons desiring to play cards is a public place within the meaning of the statute, although all who desire to play may not be permitted or have access to it. This covers the point at issue in this case. There is no question but what this club room is a public place; it is certainly not a private place. But it is insisted on behalf of appellant, that inasmuch as access to the place is limited only to a certain class, and is not open to the entire public, it is not a public place within the meaning of the statute. To this the State can not agree, nor will the authorities sustain the position. A place can not lose or be divested of its public character by reason of the fact that those who have access to it are limited to a particular class or circle of people. The evidence in this case shows that the club room was one commonly resorted to for the purpose of amusement, literary entertainments, and for business meetings to promote the best interest of the city of Weatherford, and to encourage and solicit immigration thereto. The members of the club

and their friends had access to the club at all times, and the evidence shows that it was a frequent and common resort not only for the purposes above enumerated, but for the purpose of playing games with cards, billiards, etc. The case comes clearly within the statute.

HURT, PRESIDING JUDGE.—The charging part of the indictment reads: "Did then and there unlawfully play at a game of cards in a public place, to wit, the Commercial Union club rooms, which club room was then and there a place to which people did then and there commonly resort for the purpose of business, amusement, and recreation, and which club room was then and there a public place." Counsel for appellant moved to quash, and, the motion being denied, error is claimed. The plain meaning of the charge is that the Commercial Union club rooms was, when the cards were played, a public place or room, made so by people resorting there commonly for business, amusement, and recreation. Presented in a different way, as people commonly resorted to said room for business, amusement and recreation, said room was in fact, though not named in the statute, a public place. Being a public place by reason of the above facts, to play cards at such a room would be an offense, if that was the character of the room when the cards were played. There was no error in refusing to quash the indictment.

The statute on gaming has declared certain houses to be public houses, and the courts will judicially recognize such houses to be public places without averment to that effect; but, as to the character of houses other than those specified in the statute, the courts can not take judicial cognizance whether they are public or private, and the question is one of fact, for the decision of the jury. The term "public house," as used in the statute (Penal Code, article 356), designates a house which is commonly open to the public, either for business, pleasure, religious worship, the gratification of curiosity, and the like. Now, the question of fact in this case is, was the Commercial Union club room, at the time the cards were played, a house commonly open to the public? Had the people generally the right to visit said room? Were they permitted to resort to said room generally—ordinarily? If so, said room was a public place. It appears from the statement of facts that a number of the leading citizens of Weatherford associated themselves for the purpose of encouraging all public enterprises which were calculated to redound to the benefit of the city and county. This association was named "The Commercial Union Club." Its room or hall was situated over the Lurine building, in the city of Weatherford. Except when the club had under discussion some public enterprise affecting the general welfare of the city or Parker County, no one but its members or invited guests were permitted to visit it. Citizens of the city were not invited, the members having

no authority to invite any person except visitors. No gambling of any character was permitted. Whist and euchre were played for amusement. A janitor was employed, who admitted members, and ejected all persons who were not authorized to enter. When the room was open to the public, no card playing was done or permitted. Appellant and the members frequently played euchre and whist, mainly the latter. Under the above facts, was the room, when the cards were played, a "public place," as that term is used in the statute? We are of opinion that it was not.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.